# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO._____

PLANTIFF:  KEITH L. DEAN

V.

DEFENDANT: CHAMPION EXPOSITION SERVICES

## COMPLAINT

### Parties

1. The plaintiff. KEITH L. DEAN residing at 115 Auburn St. is a resident of Cranston, Providence County, Rhode Island and a citizen of the United States.

2. The defendant, CHAMPION EXPOSITION SERVICES, is located at 139 Campanelli Dr. In Middleboro, Plymouth County, Massachusetts.

### Jurisdiction

3. This court has jurisdiction over this matter pursuant to 28. U.S.C §1331.

### Facts

4. On November 4, 2009, I filed a claim with EEOC against my employer for gender discrimination (Champion Exposition Services), because I felt that I've been treated unfairly when requesting to work from home as my co-worker was allowed and as many other women throughout the company who work from home. I didn't know at the time of any other men who worked from home. It was confirmed during the fact-finding appointment with EEOC that no males worked from home. There also were no company policies in place relating to this option before my request was made. My claim is based off the treatment of my co-worker (Candace Charpentier) in my department (Creative Services) who's being allowed to work from home three days of the week due to her having children and daycare would be too expensive for her to come to work every day.

5. September 2008, I spoke with my Manager (Chris Young) regarding me working from home once my son was released from the Neonatal intensive Care Unit (born 26 weeks gestation) at Women's & Infants. He told me that he didn't want to set a precedent within the group for workers to work from home. I informed him that a precedent was already set when he allowed my co-worker to work from home (co-worker was working from

home close to a year at this time & pregnant again).He also informed me that there was coming a wave of layoffs and didn't think it was a good idea for me to work from home (as my co-worker continued to do so). I let him know that I would take FMLA since I wasn't allowed to work from home and because of the seriousness of my son's condition. No layoffs came until 2011.

6. On January 5, 2009, I put in a request to take 4 weeks of FMLA leave from work to take care of my son coming home the next day (1/6/09).

7. I returned to work on February 3, 2009. I sent an email to my manager to set up a meeting regarding my work schedule moving forward. Per doctor's orders, My son could not go to daycare, nor will any daycare take him while he's still on oxygen. I requested to work from home Tuesday and Thursday in order to offset with my wife's schedule. I was then told that the department wasn't able to offer work from home options to employees moving forward (while Mrs. Charpentier continued to enjoy this option), and that my remaining time of FMLA would cover me watching my son. I took intermittent FMLA in which I worked in the office three days a week (Monday, Wednesday & Friday) and stayed at home for two days (Tuesdays & Thursdays). I sent my hours to payroll every week and still getting my 35 to 40 hours a week without any complaints of work performance. During this time, Chris Young, manager, left the company of his own will on Aug 24, 2009.

8. On September 23, 2009 HR contacted me about paperwork to give my son's doctor regarding his overall health status. After hearing of more women working from home, since my last request, I requested again to work from home two days per week, as I had been doing under FMLA. Lisa Foley (HR) said she would talk with Jim Cullen (colleague promoted as the new manager) regarding getting me a computer to work from home or what other option they should take moving forward.

9. On October 7, 2009 I went to HR to inform them that doctor deemed my son was healthy enough to go to daycare.

10. On October 30, 2009 when I got to work I was called into the meeting with HR and Jim Cullen. The decision was that I needed to come back to work. My request to work from home with a computer (with software) or getting a raise was denied. I left the meeting, but later talked with Jim, as Lisa was not available, and asked was Candace returning to work every day, he said No. I told Jim that I felt I was being treated unfairly and no reason or valid rationale was given for the denied request.

11. On November 4th, 2009 I was called back into a meeting again with HR and Jim Cullen based on my comments with Jim. I was told flat out that they could not meet either option of my requests. They felt it was not in the best interest of the Company or the department to grant my request. Lisa Foley (HR) told me that we could make arrangements for me to get unemployment benefits if that's what I wanted. Afterwards, she asked me what I was going to do from a legal standpoint. I told her that would be a discussion between my wife and me.

Wherefore, the Plaintiff demands judgment against the defendants for damages and attorney fees. Also, updated employee policy or handbook be put in place to allow men these same

childcare benefits or work-from-home options as women. And such other relief as this Court deems just.

The plaintiff demands a trial by jury.

Signature _____

Name: Keith L. Dean

Address: 115 Auburn Street Cranston, RI 02910

Telephone: 314.256.9611