UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


KEITH L. DEAN,
     Plaintiff,

     v.                                    CIVIL ACTION NO.
                                           11-11939-PBS
CHAMPION EXPOSITION
SERVICES, INC.,
     Defendant.



**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**
**(DOCKET ENTRY # 25)**

**May 9, 2013**


**BOWLER, U.S.M.J.**

     Pending before this court is a motion to amend the
complaint (Docket Entry # 25) filed by plaintiff Keith Dean
("plaintiff") under Rule 15, Fed. R. Civ. P. ("Rule 15").[1]  After
conducting a hearing on January 23, 2013, this court took the
motion (Docket Entry # 25) under advisement.

                    PROCEDURAL BACKGROUND

     The parties' dispute arises out of plaintiff's employment
at defendant Champion Exposition Services, LLC ("defendant").
The original pro se complaint sets out a cause of action of

---

[1]     A magistrate judge has "the authority to decide the
motion to amend outright" under 28 U.S.C. § 636(b)(1)(A).
Maurice v. State Farm Mutual Automobile Insurance Co., 235 F.3d
7, 9 n.2 (1st Cir. 2000) (referring to a motion for leave to file
an amended complaint to add a new count).

gender discrimination in violation of 42 U.S.C. § 2000(e) ("Title VII").  (Docket Entry # 1).

Plaintiff seeks to assert an additional claim of gender discrimination in violation of Massachusetts General Laws Chapter 151B, section 4(1) ("chapter 151B") and to make minor edits to the paragraphs of the original pro se complaint. (Docket Entry # 26, Ex. 1).  Defendant submits that the amendment is improper on the basis of futility and untimeliness. (Docket Entry # 27).

STANDARD OF REVIEW

It is well settled that futility constitutes an adequate basis to deny amendment.  See Universal Communications Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007); Maine State Building and Construction Trade Council, AFL CIO v. United States Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004).  "An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss."  Menard v. CSX Transportation, Inc., 840 F.Supp.2d 421, 427 (D.Mass. 2012).  To survive a Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)"), motion to dismiss, the complaint must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable.  See Bell Atlantic v. Twombly, 550 U.S. 544, 555-58 (2007); see, e.g., Kenney v. State Street Corp., 2011 WL 4344452, at *2 (D.Mass. Sept. 15, 2011) (applying

Rule 12(b)(6) <u>Twombly</u> standard in assessing futility of proposed
amendment).  Thus, while "not equivalent to a probability
requirement, the plausibility standard asks for more than a
sheer possibility that a defendant has acted unlawfully."
<u>Boroian v. Mueller</u>, 616 F.3d 60, 65 (1st Cir. 2010) (internal
quotation marks omitted).  "[A]ccepting as true all well-pleaded
facts in the complaint and making all reasonable inferences in
the plaintiff's favor," <u>Id.</u> at 64, the "factual allegations
'must be enough to raise a right to relief above the speculative
level.'"  <u>Gorelik v. Costin</u>, 605 F.3d 118, 121 (1st Cir. 2010).

FACTUAL BACKGROUND

The proposed amended complaint sets out the following
facts.  On August 30, 2008, plaintiff's son was born prematurely
at 26 weeks gestation and was hospitalized in the neonatal
intensive care unit ("NICU") at Women and Infant's Hospital of
Rhode Island until January 6, 2009.  (Docket Entry # 26, Ex. 1).
In September 2008, plaintiff spoke with Chris Young ("Young"),
manager of plaintiff's department, regarding working from home
once his son was released from the NICU.  (Docket Entry # 26,
Ex. 1).  Young stated that he did not want to set a precedent
within the group for workers to work from home.  (Docket Entry #
26, Ex. 1).  He also stated that a wave of layoffs was looming
and it was not a good idea for plaintiff to work from home.
(Docket Entry # 26, Ex. 1).  Plaintiff stated that a precedent

was already set when Young allowed Candace Charpentier ("Charpentier"), his co-worker who was pregnant again, to work from home for almost a year.  (Docket Entry # 26, Ex. 1). Plaintiff informed Young that he would take time off under the Family Medical Leave Act ("FMLA") since he was not allowed to work from home and needed to care for his son.  (Docket Entry # 26, Ex. 1).

On January 5, 2009, plaintiff submitted a request to take four weeks of FMLA leave from work to take care of his son who was coming home the next day.  (Docket Entry # 26, Ex. 1).  On February 3, 2009, plaintiff returned to work and set up a meeting with Young regarding his work schedule.  (Docket Entry # 26, Ex. 1).  Plaintiff requested to work from home Tuesdays and Thursdays in order to offset his wife's schedule and to provide care to his son who was not yet cleared to attend daycare. (Docket Entry # 26, Ex. 1).  Young stated that the department was not able to offer work from home options to employees even though Charpentier continued to work from home.  (Docket Entry # 26, Ex. 1).  Young also stated that plaintiff's remaining FMLA leave "would cover him watching his son."  (Docket Entry # 26, Ex. 1).  Plaintiff took intermittent FMLA leave during which he worked in the office for three days a week and stayed at home on Tuesdays and Thursdays.  (Docket Entry # 26, Ex. 1).  Plaintiff continued to work 35 to 38 hours a week without any complaint

regarding his work performance.  (Docket Entry # 26, Ex. 1).  On August 24, 2009, Young left the company.  (Docket Entry # 26, Ex. 1).

On September 23, 2009, defendant's Human Resources Department contacted plaintiff to provide documents for plaintiff to give to his son's doctor regarding his son's overall health status.  (Docket Entry # 26, Ex. 1).  After hearing about additional women working from home since his last request, plaintiff again requested to work from home two days per week.  (Docket Entry # 26, Ex. 1).  Lisa Foley ("Foley") of Human Resources said she would confer with Jim Cullen ("Cullen"), the new manager, regarding providing plaintiff with a computer to work from home or other options.  (Docket Entry # 26, Ex. 1).  On October 7, 2009, plaintiff notified Human Resources that the doctor cleared his son as healthy enough to go to daycare.  (Docket Entry # 26, Ex. 1).

On October 30, 2009, plaintiff met with Foley and Cullen. (Docket Entry # 26, Ex. 1).  Foley and Cullen told plaintiff that he needed to come back to work and denied his request to work from home with a computer and to receive a raise.  (Docket Entry # 26, Ex. 1).  Plaintiff left the meeting but later talked to Cullen and asked about whether Charpentier was returning to work everyday.  (Docket Entry # 26, Ex. 1).  Cullen responded, "No."  (Docket Entry # 26, Ex. 1).  Plaintiff told Cullen that

he felt he was being treated unfairly and that he was not given a valid reason for the denial of his requests. (Docket Entry # 26, Ex. 1).

On November 4, 2009, Foley and Cullen held another meeting with plaintiff. (Docket Entry # 26, Ex. 1). Plaintiff was told "flat out" that they could not grant either of his requests because it was not in the best interest of the company or the department to grant plaintiff's request. (Docket Entry # 26, Ex. 1). Foley told plaintiff that they could make arrangements for him to receive unemployment benefits. (Docket Entry # 26, Ex. 1). Foley also asked plaintiff what legal action he intended to take. (Docket Entry # 26, Ex. 1). Plaintiff stated that he would have a discussion with his wife. (Docket Entry # 26, Ex. 1). After the meeting, plaintiff continued to work full time at defendant's office. (Docket Entry # 26, Ex. 1).

Plaintiff filed a complaint of gender discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD") on November 7, 2009. (Docket Entry # 26, Ex. 1). The EEOC investigated plaintiff's complaint and issued a final determination on May 20, 2011, which found reasonable cause that no men in the plaintiff's department were granted the right to work from home and that defendant treated plaintiff unequally based on his sex. (Docket Entry # 26, Ex. 1). On August 3,

2011, the EEOC issued a notice of right to sue. (Docket Entry # 26, Ex. 1). Plaintiff filed this action on October 31, 2011. (Docket Entry # 26, Ex. 1).

## DISCUSSION

In objecting to the proposed amended complaint, defendant argues that: (1) the chapter 151B claim is time barred; (2) plaintiff failed to meet the jurisdictional requirements under chapter 151B; and (3) the motion is untimely.

I.   Chapter 151B Claim is Timely

Defendant argues that the chapter 151B gender discrimination claim is time barred. (Docket Entry # 27). Defendant points out, correctly, that plaintiff's September 2008 request to go on leave after his son's birth took place more than three years before the October 31, 2011 filing of this action. (Docket Entry # 27). Defendant also submits that the continuing violation doctrine does not apply because plaintiff experienced the single discriminatory act in September 2008 and that his subsequent requests within the statute of limitations "are of no moment." (Docket Entry # 27).

Title VII and chapter 151B each "require plaintiff to file claims with the [EEOC] and the MCAD before filing suit in court and within 300 days of complained acts of discrimination." Diaz v. Jiten Hotel Mgmt., Inc., 762 F.Supp.2d 319, 327 (D.Mass. 2011); see 42 U.S.C. § 2000e-5(e); Mass. Gen. L. ch. 151B, § 5;

<u>Windross v. Barton Protective Serv., Inc.</u>, 586 F.3d 98, 102 (1st Cir. 2009) ("Massachusetts law . . . requires a claimant to file a Charge of Discrimination with [the MCAD] within 300 days of the alleged discriminatory act"); <u>Alston v. Massachusetts</u>, 661 F.Supp.2d 117, 123 (D.Mass. 2009) (the "plaintiff must file a Title VII or 151B claim within 300 days of the discriminatory act"). The plain language of chapter 151B states that, "any complaint filed pursuant to this section must be so filed within 300 days *after the alleged act of discrimination*." Mass. Gen. L. ch. 151B, § 5 (emphasis added).

"[T]he 300 day requirement, [however], shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature." 804 C.M.R. § 1.10. "Although the limitations clock generally starts with the commission of a discriminatory act, a true 'continuing violation' rewinds the clock for each discriminatory episode along the way." <u>Mack v. Great Atl. & Pac. Tea Co.</u>, 871 F.2d 179, 183 (1st Cir. 1989) (citing <u>Velazquez v. Chardon</u>, 736 F.2d 831, 833 (1st Cir. 1984)). The doctrine therefore allows a plaintiff to recover damages for untimely discriminatory acts if he establishes the required prerequisites, stated below, for the doctrine's application. See <u>Cuddyer v. Stop & Shop Supermarket Co.</u>, 750 N.E.2d 928, 935 n.10 (Mass. 2001). The doctrine "recognizes that some claims of

discrimination involve a series of related events that have to
be viewed in their totality in order to assess adequately their
discriminatory nature and impact." Id. at 936.

In order for the continuing violation doctrine to apply, a
complainant must prove that:

> (1) at least one discriminatory act occurred within the six
> month limitations period;[2] (2) the alleged timely
> discriminatory acts have a substantial relationship to the
> alleged untimely discriminatory acts; and (3) earlier
> violations outside of the six-month limitations period did
> not trigger [the plaintiff's] "awareness and duty" to
> assert his rights.

Ocean Spray Cranberries, 808 N.E.2d at 266-67.  A plaintiff's
awareness and duty are triggered when he "knew or could have
formed a reasonable belief that the earlier violations were
discriminatory." Id. at 267 n.16; see Windross, 586 F.3d at 103
(employee stated that he "understood" that he was being
discriminated against at the time of each discriminatory act);
Desrosiers v. Great Atlantic & Pacific Tea Co., Inc., 885
F.Supp. 308, 313 (D.Mass. 1995) (employee knew of the
discriminatory act "at least" by the time she reported it to the
personnel director); Ocean Spray Cranberries, 808 N.E.2d at 270
(no response to employee's repeated requests for accommodations

---

[2]   In 2002, the Massachusetts Legislature
amended Massachusetts General Law Chapter 151B, section 5,
extending the limitations period from six months to 300 days.
Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against
Discrimination, 808 N.E.2d 257, 265 n.11 (Mass. 2004).

and failure to give explanation for doing so put employee on notice).

The continuing violation doctrine does not apply to discrete discriminatory acts that are independently actionable such as a termination or a denial of a promotion.  Id. at 268. The Massachusetts Supreme Judicial Court in Ocean Spray explains that, "[A]lthough each new [denial] constitutes a separate violation and triggers a new limitations period, a complainant may not assert previous violations outside the limitations period if, at the time of the earlier violations, the complainant knew or could have formed a reasonable belief that the earlier violations were discriminatory."  Id. at 266-67.

In applying the continuing violation doctrine to the facts, at least one discriminatory act occurred within the 300 day period.  Plaintiff made timely requests on February 3, 2009, to work a flexible schedule and on September 23, 2009, to work a flexible schedule and be provided with a computer to work from home.  (Docket Entry # 26, Ex. 1).  There was a substantial relationship between plaintiff's first request to work from home in September 2008 to plaintiff's subsequent timely requests for a flexible work schedule allowing him to work at home two days a week and the request to work at home with a computer.

Assuming arguendo that plaintiff's September 2008 conversation with Young was a discriminatory act, the issue

devolves into whether the September 2008 violation triggered plaintiff's awareness and duty to assert his rights.  When plaintiff asked Young to work at home upon his son's release from the hospital, Young responded that he did not want to set a precedent.  (Docket Entry # 26, Ex. 1).  He also stated that he did not think it was a good idea for plaintiff to take time off when "a wave of layoffs was coming."  (Docket Entry # 26, Ex. 1).  Plaintiff stated that a precedent was already set when Young allowed Charpentier to work from home for almost a year.  (Docket Entry # 26, Ex. 1).  Plaintiff also informed Young that "he would take time off under FMLA since he was not allowed to work from home and because of the seriousness of his son's condition."  (Docket Entry # 26, Ex. 1).  Thus, instead of renewing the request when his son was released from the hospital in January 2009, plaintiff took four weeks of FMLA leave.  (Docket Entry # 26, Ex. 1).  In these circumstances, plaintiff was on adequate notice in September 2008 that his request to work from home after his son's release from the hospital was not going to be accommodated.  Therefore, the continuing violation rule does not rewind the clock to September 2008.  The 300 day limitations period for defendant's failure to accommodate plaintiff's first request expired before plaintiff filed the MCAD complaint on November 7, 2009.  Even assuming that the September 2008 request is a discriminatory act, it nevertheless

falls outside the 300 day limitations period thereby precluding recovery for that act.

The February 3, 2009 denial of plaintiff's request to work at home two days a week falls within the 300 day period.  The October 30, 2009 purported violation likewise falls within the 300 day period.  In addition, these acts fall within the three year statute of limitations period.  Therefore, plaintiff may proceed on these claims of gender discrimination under chapter 151B.

## II.   Jurisdictional Basis under Chapter 151B

Defendant contends that plaintiff failed to meet the jurisdictional requirements of chapter 151B.  (Docket Entry # 27).  Defendant argues that plaintiff's charge filed with the EEOC and cross filed with the MCAD did not allege a claim of gender discrimination pursuant to chapter 151B.  (Docket Entry # 27).  Defendant maintains that plaintiff's "vague reference" to "applicable state law" in the charge does not satisfy the administrative requirements of chapter 151B.  (Docket Entry # 27).

Chapter 151B imposes certain jurisdictional requirements that must be met before a complaint alleging a violation may be asserted in court.  First and foremost, a plaintiff must file a charge with the MCAD before filing a complaint.  See Mass. Gen. L. ch. 151B, § 5.  "The purpose of that requirement is to

provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d 456, 464 (1st Cir. 1996).

The MCAD charge is "not a blueprint for the litigation to follow." <u>Powers v. Grinnell Corp.</u>, 915 F.2d 34, 38 (1st Cir. 1990). "[A]n employee is not required to comprehensively set forth with 'literary exactitude' all of the facts and theories upon which his or her claim is based." <u>Lattimore</u>, 99 F.3d at 464; <u>see</u> <u>Powers</u>, 915 F.2d at 38. Where an employee did not explicitly include a claim in an agency charge, the claim may survive if it is within the "scope of the investigation." <u>Davis v. Lucent Tech., Inc.</u>, 251 F.3d 227, 233 (1st Cir. 2001). "Claims are cognizable if they are like or reasonably related to the allegations of the charge and grow out of such allegations." <u>Powers</u>, 915 F.2d at 38 (internal quotation omitted).

Plaintiff cross filed the EEOC and MCAD charge of gender discrimination on November 7, 2009. (Docket Entry # 26, Ex. 1). Plaintiff made allegations of gender discrimination in the MCAD charge. (Docket Entry # 27, Ex. 1). Plaintiff alleged that Charpentier was allowed to work from home three days a week for childcare purposes. (Docket Entry # 27, Ex. 1). Plaintiff also alleged that he asked to work at home "a couple of days a week" but was told that defendant did not want to "set a precedent." (Docket Entry # 27, Ex. 1). Plaintiff stated in the charge that

he felt that defendant treated him unfairly based on his sex.
(Docket Entry # 27, Ex. 1).  The gender discrimination claim
under chapter 151B in the proposed amended complaint is
therefore within the scope of the allegations in the MCAD
charge.  Plaintiff satisfied the administrative requirements of
the gender discrimination claim under chapter 151B.

III.   Motion is Timely

     Defendant also seeks to deny the proposed amendment on the
basis of undue delay.  In addition to futility, undue delay and
undue prejudice may provide a basis to deny an amendment.  See
Palmer v. Champion Mortgage, 465 F.3d 24, 20 (1st Cir. 2006)
("undue delay, bad faith, futility and the absence of due
diligence on the movant's part are paradigmatic examples" to
deny leave to amend).  It is also true that a denial of leave to
amend is more likely as the case progresses.  See Steir v. Girl
Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).  In fact,
"protracted delay, with its attendant burdens on the opponent
and the court, is itself a sufficient reason for the court to
withhold permission to amend."  Id. (citing Acosta-Mestre v.
Hilton International of P.R., Inc., 156 F.3d 49, 52-53 (1st Cir.
1998)).  "Particularly disfavored are motions to amend whose
timing prejudices the opposing party by 'requiring a re-opening
of discovery with additional costs, a significant postponement

14

of the trial and a likely major alteration in trial tactics and strategy.'" Id. (quoting Acosta-Mestre, 156 F.3d at 52).

Examining the circumstances, plaintiff initially filed this case pro se on October 31, 2011.  At the March 2012 scheduling conference, this court set a deadline of September 28, 2012, for the close of fact discovery.  There was no deadline for seeking an amendment.  Cf. Steir, 383 F.3d at 12 ("'good cause' standard of Fed.R.Civ.P. 16(b)" applies if scheduling order exists); Boston Scientific Corp. v. Radius Intern., L.P., 2008 WL 1930423, *1 (D.Mass. May 2, 2008) (good cause standard applies after "court issues a scheduling order setting a deadline for amendments to the pleadings").  Plaintiff's counsel filed an appearance on August 7, 2012.  She then waited four months before filing the motion to amend on December 6, 2012.  In the meantime, this court extended the deadline for fact discovery to January 31, 2013.  Thus, the filing of the motion took place late in the discovery process albeit not in contravention of any scheduling order.  At the January 23, 2013 hearing on the motion to amend, this court extended fact discovery to March 15, 2013, and thereafter to April 15, 2013.  There is no trial date and the amendment will not result in any delay of a trial. Furthermore, because of the similar nature of the Title VII claim and the chapter 151B claim, the amendment will not result in additional discovery or otherwise prejudice defendant.  Thus,

if plaintiff filed the motion at an earlier date, the amendment would not have significantly altered the course of defendant's discovery given the similarities between the Title VII and the chapter 151B claims.  In sum, defendant's argument based on untimeliness is unavailing.

CONCLUSION

In accordance with the foregoing discussion, the motion to amend the complaint (Docket Entry # 25) is **ALLOWED.**


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge